UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HALCHAK CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>SYMBIOT BUSINESS GROUP, INC.,<br><br>        Defendant. | 07 CA 10227 (NMG) |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANT SYMBIOT BUSINESS GROUP, INC. TO
<u>DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION</u>

<u>INTRODUCTION</u>

      Pursuant to Fed. R. Civ. P. 12(b)(2), defendant Symbiot Business Group, Inc. ("Symbiot") submits this memorandum in support of its Motion to Dismiss Complaint for Lack of Personal Jurisdiction. Symbiot is a Delaware corporation with its principal place of business in Draper, Utah. Plaintiff Halchak Corporation ("Halchak") is a Massachusetts corporation, which is seeking to hold Symbiot responsible for an alleged breach of contract. The parties to the contract are Halchak and a predecessor of Symbiot's wholly-owned subsidiary, Symbiot Snow Management Network, LLC ("SSMN"). SSMN has commenced dissolution proceedings under Utah state law. Thus, Halchak is seeking to hold Symbiot responsible for the alleged contractual obligations of its defunct subsidiary.

      Symbiot does not have an office in Massachusetts, does not have any employees in Massachusetts, is not registered to do business in Massachusetts, and holds no property in Massachusetts. Given that Halchak's breach of contract claim is unrelated to Symbiot's activities in this forum, Symbiot is not subject to the personal jurisdiction of this Court. Thus, Halchak's complaint must be dismissed.

BACKGROUND

Halchak commenced this action against Symbiot in Massachusetts state court on or about December 28, 2006. Symbiot removed the case to federal court. The parties exchanged their initial disclosures under Fed. R. Civ. P. 26(f), but agreed to defer discovery on the merits of the case until this Court rules on the issue of jurisdiction. *See* Certification of Rule 26(f) Conference (Docket # 9).

In its complaint against Symbiot, Halchak asserts only two causes of action, breach of contract (Count One) and promissory estoppel (Count Two). The following facts are derived from Halchak's complaint and, except as set forth below, are presumed to be true for the purpose of Symbiot's motion to dismiss:

- In 2003, Halchak entered into a written subcontract (the "Agreement") with a Pennsylvania entity called Snow Management Group ("SMG"), pursuant to which Halchak undertook to perform snow removal and ice management services at certain locations in Massachusetts. Complaint, ¶ 5 & Ex. A.

- The Agreement is governed by Pennsylvania law. Complaint, Ex. A, ¶ 37. The Agreement includes a mandatory arbitration provision, wherein Halchak agreed that any arbitration hearings would be held in Erie, Pennsylvania. *Id.* at 35.

- Halchak contends that SMG merged into Symbiot in 2004. Complaint, ¶ 9. In fact, the assets of SMG were acquired by SSMN, a wholly-owned subsidiary of Symbiot. See Affidavit of Douglas Haymore ("Haymore Affidavit"), ¶ 4.

- After the so-called merger, Symbiot sent one check to Halchak in partial payment of amounts due by SMG under the Agreement. Complaint, ¶ 10. In addition, Symbiot representatives supposedly informed Halchak that Symbiot would pay SMG's obligations and that Halchak would deal directly with Symbiot with respect to future services. *Id.* at 11.

- Eight days later, on December 16, 2004, Symbiot proposed a new snow removal contract between Halchak and SSMN (i.e., the Symbiot subsidiary that acquired SMG's assets). *Id.* at 12. Halchak refused to sign the proposed new contract. *Id.* at 13.

- Halchak contends that two months later, on February 9, 2005, Symbiot proposed to extend the Agreement between SMG and Halchak, with Symbiot replacing SMG. *Id.*

2

In fact, the memorandum dated February 9, 2005 is from SSMN, not Symbiot.[1] See Haymore Affidavit, Ex. F. The memorandum reflects an address for SSMN in Erie, Pennsylvania, not Symbiot's address in Draper, Utah. *Id.* The memorandum states that SMG's name has been changed to "Symbiot Business Network;" it does not refer to the defendant in this case, which is Symbiot Business Group, Inc. *Id.*

- Halchak seeks to hold Symbiot responsible for $156,226.72 in unpaid snow removal services. Complaint, ¶ 16.

The following supplemental facts are supported by the Haymore Affidavit and the exhibits attached thereto:[2]

- SSMN is a wholly-owned subsidiary of Symbiot. Haymore Affidavit, ¶ 4.

- SSMN acquired the assets of SMG pursuant to an Asset Purchase Agreement dated November 3, 2004. *Id.*.

- Prior to the closing on SSMN's acquisition of SMG, representatives of SSMN contacted Halchak to verify the unpaid balance of its invoices and determine whether Halchak would be willing to discount its claim. *Id.* at 6.

- On November 18, 2004, Halchak signed a "Release" and agreed to accept 75% of its outstanding invoices of $140,988.30, with payments to be made in three installments on November 30, 2004, December 31, 2004 and June 15, 2005. *Id.* at 6 & Ex. B.

- Pursuant to the Release, Halchak expressly acknowledged that "all payments will be made by Symbiot Snow Management Group, LLC … following its acquisition of substantially all of the assets, and assumption of certain of the liabilities, of [SMG]…." *Id.* The Release does not refer to the defendant in this case, which is Symbiot Business Group, Inc.

- Twelve days later, SSMN did not yet have paper checks with which to pay the first installment owed to Halchak under the Release. *Id.* at 7. Thus, in order to meet the deadline of November 30, 2004, Symbiot issued a check drawn on its own account. *Id.* at 7 & Ex. C. Thereafter, all checks and ACH payments were made to Halchak by SSMN, not Symbiot. *Id.* at 8 & Ex. D.

---

[1] As the successor of SMG, SSMN had the unilateral right under the Agreement to extend the term of the contract. See Haymore Affidavit, Ex. F, ¶¶31 (term extension) and 36 (assignment by SMG).

[2] Consideration of materials outside the pleadings is appropriate on a motion to dismiss under Fed. R. Civ. P. 12(b)(2). *Callahan v. Harvest Bd. Int'l, Inc.,* 138 F. Supp. 2d 147, 152-53 (D. Mass. 2001). Courts will "add to the mix" specific, uncontroverted facts put forward by the defendant. *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 134 (1st Cir. 2006).

- On January 12, 2005, Halchak caused a Certificate of Liability Insurance to be issued, which provided information on Halchak's automobile liability policy. *Id.* at 9 & Ex. E.  SSMN, not Symbiot, is listed as an additional insured.

- On March 22, 2005, Halchak caused another Certificate of Liability Insurance to be issued, which provided information on Halchak's Commercial General Liability and Excess/Umbrella policies. *Id.* at 11 & Ex. G.  SSMN, not Symbiot, is listed as an additional insured.

- On or about June 12, 2006, SSMN commenced dissolution proceedings under Utah state law. *Id.* at 12.

- By letter dated July 19, 2006, Halchak submitted a written claim against SSMN as part of the Utah liquidation process. *Id.*  Halchak's claim involves the same unpaid invoices at issue in this litigation.  (In the July 19 letter, however, Halchak expressly noted its position that it "did not have a contract with the 'dissolved company' but with Symbiot Business Group, Inc.")

## ARGUMENT

I.   THIS COURT LACKS PERSONAL JURISDICTION OVER SYMBIOT.

　　A.   Halchak Has the Burden of Proof.

When a court's jurisdiction is contested, the plaintiff bears the burden of proving that jurisdiction is appropriate. *Dodora Unified Communications, Inc. v. Direct Information Pvt. Ltd.*, 379 F. Supp. 2d 10, 13 (D. Mass. 2005).  The plaintiff must make a prima facie showing that personal jurisdiction is appropriate, and may not rely on unsupported allegations to make such a showing. *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992).  Rather, the plaintiff must "go beyond the pleadings and make affirmative proof" of jurisdiction, which must be based upon "evidence of specific facts set forth in the record." *Id.*

B.      Personal Jurisdiction Requirements

Fed. Rule Civ. Proc. 12(b)(2) states that a complaint may be dismissed for lack of jurisdiction over the person. Fed. R. Civ. P. 12(b)(2). A court acting without jurisdiction lacks the power to require a party to obey its decrees. *Burnham v. Superior Court*, 495 U.S. 604, 608-09 (1990). To determine whether personal jurisdiction exists, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995).

In the present case, Halchak does not specify in its complaint whether its effort to haul Utah-based Symbiot into a Massachusetts court is based upon general jurisdiction, specific jurisdiction, or both. However, since Halchak does not even allege that Symbiot engages in "continuous and systematic" activities in Massachusetts, the analysis must begin and end with specific jurisdiction.[3] Moreover, the lack of any tort claims brings this case into a single subsection of the long-arm statute, Mass. Gen. Laws Ch. 223A, § 3(a) ("transacting any business in this commonwealth").

"The Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as coextensive with the outer limits of the Constitution." *Platten v. HG Bermuda Exempted Limited,* 437 F.3d 118, 135 (1st Cir. 2006) (citations omitted). Thus, the only question presented is whether the Fourteen Amendment allows Massachusetts to exercise personal jurisdiction over Symbiot. *Id.* Simply alleging that Symbiot entered into a contract with a Massachusetts company is not dispositive. *See Platten*, 437 F.3d at 136. Halchak also must show that Symbiot has sufficient minimum contacts with Massachusetts "such that maintenance of the suit does not offend

---

[3] Symbiot does not have any offices, employees or salespeople in Massachusetts. Symbiot is not registered to do business in Massachusetts, and has not designated any Massachusetts resident to accept service of process. Haymore Affidavit, ¶ 3. Symbiot holds no real estate, personal property or bank accounts in Massachusetts. *Id.*

5

'traditional notions of fair play and substantial justice.'" *Id.* (citations omitted). For specific jurisdiction, the "minimum contacts" standard has two requirements. First, Halchak's breach of contract claim must be "related to" Symbiot's contacts in Massachusetts. *Id.* Second, the exercise of jurisdiction over Symbiot "must be reasonable under the circumstances." *Id.*

     C.     <u>Halchak's Claim is not Related to Symbiot's Contacts in Massachusetts</u>.

Halchak's theory of specific jurisdiction appears to be that its contract-based claims arise from Symbiot's alleged proposal "on February 9, 2005 to extend the 2004-2005 snow removal contract executed by and between SMG and Halchak, with Symbiot Business Network replacing SMG. Halchak agreed to continue under this agreement, with the understanding that Symbiot would be responsible for all payments to Halchak." Complaint, ¶ 13. There are several problems with Halchak's position:

- The defendant in this case is Symbiot Business Group, Inc., not "Symbiot Business Network."
- The memorandum dated February 9, 2005 is from SSMN; there is no mention of defendant Symbiot Business Group, Inc. *See* Haymore Affidavit, Ex. F.
- There is not a single writing to evidence Symbiot's alleged undertaking to pay the obligations of its subsidiary.
- Halchak does not allege that the negotiation of the parties' alleged oral agreement took place in Massachusetts.
- Halchak does not allege that Symbiot sent goods, services or personnel into the Commonwealth, directed the Massachusetts-based activities of Halchak, or otherwise performed any actions within this forum.
- Symbiot's performance of the alleged oral agreement merely involved the payment of money – i.e., sending checks from Utah to Massachusetts.
- The uncontroverted evidence is that Symbiot sent only one check to Halchak on November 30, 2004 (i.e., several months before the supposed oral agreement on February 9, 2005) and that every other payment to Halchak was made by SSMN out of Erie, Pennsylvania. *See* Haymore Affidavit, ¶¶ 7 & 8, Exs. C & D.

Halchak's jurisdictional hook has no barb. It consists of nothing more than Symbiot's mailing of a single check from Utah to Massachusetts, and one instance on December 8, 2005 when

"Symbiot representatives contacted Halchak." Complaint, ¶ 11. Under these circumstances, Halchak has failed to satisfy its burden of establishing personal jurisdiction. *Platten,* 437 F.3d at 136-37 (dismissing contract claims for lack of personal jurisdiction where plaintiffs' affidavits were silent as to the place of contracting and no showing could be made that the defendant's performance occurred in Massachusetts); *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284 (1st Cir. 1999) (transmitting checks into the forum once a year, sending a few letters into the forum, and visiting the forum on one occasion in connection with the underlying dispute deemed insufficient to warrant exercise of personal jurisdiction).

      D.      The Exercise of Personal Jurisdiction Over Symbiot Would Not Be Reasonable Under the Circumstances of this Case.

Halchak's complaint defines the "Agreement" at issue in this case as the "Snow Removal and Ice Management Services Agreement" between SMG and Halchak dated December 3, 2003. Complaint, ¶ 5. Halchak contends that Symbiot agreed to pay the obligations of SMG under the Agreement after Symbiot's subsidiary, SSMN, acquired the business. *Id.* at 11. The Agreement is governed by **_Pennsylvania_** law. Complaint, Ex. A, ¶ 37. In fact, the Agreement mandates that any disputes shall be decided through arbitration proceedings in **_Erie_**, **_Pennsylvania_**. *Id.* at 35. In the face of these provisions, it is impossible to argue that Symbiot purposefully availed itself of the benefits and protections of Massachusetts law when it purportedly agreed to pay amounts owed to Halchak under this Agreement.

The jurisdictional epicenter of any suit arising out of the Agreement is Pennsylvania. Nevertheless, if any alternative forum should be considered, the State of Utah has a greater claim to this dispute than Massachusetts. Symbiot's Utah subsidiary, SSMN, acquired the Pennsylvania snow management business from SMG, which was the original party to the Agreement with Halchak. In 2006, SSMN commenced liquidation proceedings under Utah law. On July 19, 2006 –

almost six months prior to the filing of this litigation - Halchak responded to SSMN's "Notice of Dissolution" in the form of a letter addressed to Symbiot's counsel in Utah.  *See* Haymore Affidavit, Ex. H.  The courts of Utah have the greatest interest in determining the circumstances under which an alleged oral agreement would cause a Utah-based company to become liable for the obligations of its insolvent Utah subsidiary.

Finally, Halchak's entire case turns on the allegations that Symbiot, not its insolvent subsidiary (SSMN), is the proper party to the Agreement.  This will be difficult if not impossible in light of the overwhelming contradictory evidence, including:

- In the release dated November 18, 2004, which involved amount owed under the Agreement, Halchak expressly acknowledged that "all payments will be made by [SSMN] following its acquisition of substantially all of the assets, and assumption of certain of the liabilities, of [SMG]…."  Haymore Affidavit, Ex. B.

- In the certificate of automobile liability insurance dated January 12, 2005, which is required by the Agreement, Halchak named SSMN (not Symbiot) as an additional insured.  *Id.*, Ex. E.

- In the certificate of general liability and excess/umbrella insurance dated March 22, 2005, which is required by the Agreement, Halchak named SSMN (not Symbiot) as an additional insured.  *Id.*, Ex. G.

In light of these undisputed facts, Halchak's only means of obtaining money from Symbiot is to force the Utah-based company to defend this case in a forum that lies over 2,000 miles away from its place of business.  Halchak's house of cards must crumble because the plaintiff has failed to meet its burden of proof with respect to personal jurisdiction.  Thus, Symbiot's motion to dismiss must be allowed.

## **CONCLUSION**

For the foregoing reasons stated and based on the authorities cited, defendant Symbiot Business Group, Inc. respectfully requests that this Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and grant such other relief as the Court deems just and proper.

May 21, 2007

Respectfully submitted,

SYMBIOT BUSINESS GROUP, INC.

By its attorneys,

/s/ Joseph J. Koltun
Martin P. Desmery (BBO#550133)
Joseph J. Koltun (BBO# 641117)
Craig and Macauley
  Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210
Phone: (617) 367-9500
Fax:    (617) 742-1788

## CERTIFICATE OF SERVICE

I, Joseph J. Koltun, hereby certify that I caused true and correct copies of the foregoing *Memorandum of Law in Support of Motion By Defendant Symbiot Business Group, Inc. to Dismiss Complaint for Lack of Personal Jurisdiction* to be served upon the parties listed below by regular and electronic mail this 21st day of March, 2007.

David B. Madoff, Esq.
Madoff & Khoury LLP
124 Washington Street
Foxboro, MA 02035
(508) 543-0040
madoff@mandkllp.com

/s/ Joseph J. Koltun
Joseph J. Koltun